1  Frank S. Moore SBN 158029
   LAW OFFICES OF FRANK S. MOORE, APC
2  Suzy C. Moore SBN 151502
   LAW OFFICES OF SUZY C. MOORE
3  1374 Pacific Avenue
   San Francisco, CA 94109
4  (415) 292-6091

5  Attorneys for Plaintiff

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11  JOHN VETTER,                      )   No.
                                      )
12            Plaintiff,              )   **COMPLAINT FOR DAMAGES AND**
                                      )   **INJUNCTIVE RELIEF**
13       v.                           )
                                      )        (Jury Trial Demanded)
14  JANI-KING OF CALIFORNIA, INC., a Texas )
15  Corporation doing business in California, JANI- )
    KING INTERNATIONAL, INC., a Texas )
16  Corporation doing business in California, )
    RHONDA PERRY, an individual, AND DOES 1 )
17  through 25,                       )
                                      )
18            Defendants.             )
                                      )
19  _____ /

20

21

22

23

24

25

26

27
    VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                    1
28  COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# I.   PARTIES

1.    Plaintiff JOHN VETTER (hereinafter VETTER), was at all relevant times alleged herein an employee of JANI-KING OF CALIFORNIA, INC., and JANI-KING INTERNATIONAL, INC. (collectively JANI-KING), and a resident of the County of San Mateo, California.

2.    Defendant  JANI-KING OF CALIFORNIA, INC., is a corporation organized under the laws of the State of Texas and at all relevant times alleged herein was doing business in the County of San Mateo, California.

3.    Defendant JANI-KING INTERNATIONAL, INC., is a corporation organized under the laws of the State of Texas and at all relevant times alleged herein was doing business in the County of San Mateo, California.

4.    Defendant RHONDA PERRY is an individual and was at all relevant times alleged herein an employee of JANI-KING OF CALIFORNIA, INC., and JANI-KING INTERNATIONAL, INC., and a resident of the County of San Mateo, California.

5.    Plaintiff is ignorant of the true names and capacities of DOES 1 through 25 herein and prays leave of Court to insert the true names and capacities of such defendants when they become known or are ascertained together with appropriate charging allegations.

6.    Plaintiff is informed and believes and thereupon alleges that each of the Defendants named herein was the agent, employee, or representative of each of the remaining Defendants, and in doing the things herein mentioned, was acting in the course and scope of such agency and employment.

# II.   JURISDICTION AND VENUE

7.    This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

8.    Jurisdiction is conferred on this court by virtue of 28 U. S .C .sections 1331 and 1343. The acts and omissions complained of herein occurred in the County of San Mateo, California, which is in this judicial district, the relevant employment records are maintained and/or administered in the

County of San Mateo, California, and plaintiff would have been employed in the County of San Mateo, California, but for the acts and omissions complained of herein.   Venue is therefore appropriate pursuant to 28 U.S.C. § l39l(b)(2) and/or 42 U.S.C. § 2000e-5(f)(3).

9.   On April 5, 2002, VETTER filed an administrative complaint with the Equal Employment Opportunity Commission (EEOC).   A true and correct copy of said administrative complaint is attached hereto and incorporated herewith as Exhibit "A."   On May 14, 2003, the EEOC issued a right to sue letter.   A true and correct copy of the EEOC's right to sue letter is attached hereto and incorporated herewith as Exhibit "B."   The Title VII claims set forth herein are therefore timely.

10.   On February 20, 2003, VETTER filed a suit in San Mateo County Superior Court against defendants JANI-KING OF CALIFORNIA, INC.,  JANI-KING INTERNATIONAL, INC. and RHONDA PERRY, Case No. CIV 429357, alleging claims for breach of implied-in-fact contract for continuous employment, intentional infliction of emotional distress, assault, invasion of privacy, and wrongful termination against public policy.   The pendent state claims contained within this Complaint are therefore timely, arise from the same nucleus of operative facts, and involve substantially identical issues of fact and law, such that the entire action constitutes a single case which ordinarily would be prosecuted in one proceeding.   The court has pendent jurisdiction over plaintiff's state claims and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.   Plaintiffs seek damages, costs of suit and reasonable attorneys' fees.

**III.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION AND COUNTS**

11.   Plaintiff JOHN VETTER suffers from an acute form of coronary heart disease.   In March 2001, VETTER underwent angioplasty surgery to have a metal stint placed in the right side of his heart.   Also in March of 2001, VETTER interviewed for a  position as Regional Director for JANI-KING OF CALIFORNIA, INC., at the company's Oakland office.   JANI-KING is the world's leading commercial cleaning franchise company.   Debbie Sinopoli (Regional Director) interviewed VETTER for the position and VETTER was given a second interview with Randy Bouldin,

VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                                    3
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Corporate Operations Advisor.  VETTER was thereafter contacted by Garry Clark, President of

2   JANI-KING INTERNATIONAL, INC., interviewed by him and was thereafter offered a job as

3   Regional Director of JANI-KING OF CALIFORNIA, INC.'s Burlingame Office.  VETTER accepted

4   the position and began working on April 9, 2001.  Also in April 2001, VETTER underwent a second

5   angioplasty surgery to have a metal stint placed in the left side of his heart.

6          12.     Plaintiff is informed and believes and thereupon alleges that defendant RHONDA

7   PERRY   was   employed   by   JANI-KING   OF   CALIFORNIA,   INC.,   and   JANI-KING

8   INTERNATIONAL, INC., in 2000, as Customer Service Representative.  Plaintiff is further informed

9   and believes and thereupon alleges that defendant RHONDA PERRY was promoted to Office

10  Manager shortly before VETTER was hired.

11         13.     Within the first several weeks of his starting work, VETTER asked  defendant

12  RHONDA PERRY for her help as he had done with all the staff.  Defendant RHONDA PERRY was

13  very cordial and was more than willing to assist me in helping the region prosper.  After exchanging

14  pleasantries, defendant RHONDA PERRY asked VETTER if he had "a personal relationship with

15  Jesus Christ."  VETTER told defendant RHONDA PERRY that his religious beliefs were personal

16  to him and was shared only between he and his family and at home and that he didn't believe religious

17  proselytizing belonged in the work place.  Plaintiff VETTER tried to be pleasant about what he

18  considered  to  be  an  awkward  situation.  However,  after  these  exchange  of  views,  defendant

19  RHONDA PERRY proceeded to have a change in attitude toward VETTER.

20         14.     Defendant RHONDA PERRY proceeded to tell VETTER that she was very religious

21  and that she spent every evening at her church in Sunnyvale, California.  She also proceeded to tell

22  VETTER that she would read the Bible at work and was very busy doing the work of her church

23  whenever Jesus told her to.  Defendant RHONDA PERRY told VETTER that he would not be her

24  boss as she only took orders from Corporate Accounts Advisor, Mrs. Jill Bean.  Defendant

25  RHONDA PERRY told VETTER that she and Mrs. Bean were "real close" and during the past three

26  months Mrs. Bean relied on her to be the "eyes and ears" of JANI-KING OF CALIFORNIA, INC.,

27

28  VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                                    4
    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    when Mr. Bouldin wasn't there.  Defendant RHONDA PERRY told VETTER that "obviously we

2    worship two different gods" and that she would "keep an eye on him."

3          15.   On almost a daily basis defendant RHONDA PERRY would have her Bible open on

4    her desk and would on many occasions quote scripture to JANI-KING OF CALIFORNIA, INC.,

5    employees.  Plaintiff VETTER counseled PERRY about using work time to conduct religious

6    activities. Defendant RHONDA PERRY rebuffed VETTER's verbal counseling.

7          16.   Beginning in June 2001, PERRY began a campaign of false accusations directed

8    toward VETTER for the purpose of getting him fired.  VETTER hired a telemarketer named Vania

9    Gomez.  VETTER determined that Mrs. Gomez was very professional on the phones, seemed very

10   enthusiastic in her work, and seemed very organized in her approach to her job.  VETTER had been

11   ordered by JANI-KING INTERNATIONAL, INC., to hire sales people and implement a sales

12   program.  This was a difficult task as JANI-KING INTERNATIONAL, INC.'s compensation

13   program was not competitive. VETTER asked Mrs. Gomez if she wanted to become a sales person

14   as he had offered many of his staff that had enthusiasm for  JANI-KING INTERNATIONAL, INC.

15   Mrs. Gomez told VETTER that she didn't think she would be interested in the position and VETTER

16   told her that her rejection of the offer was no problem.  Defendant PERRY overheard VETTER's

17   conversation with Mrs. Gomez and pulled her aside.  Defendant PERRY convinced Mrs. Gomez that

18   if she didn't take the job she would be fired.  Mrs. Gomez confronted VETTER the next day upset

19   at the prospect of being fired.  Defendant PERRY manufactured this circumstance and then sent an

20   e-mail to JANI-KING INTERNATIONAL, INC., falsely accusing VETTER of sexually harassing

21   Mrs. Gomez.

22         17.   Shortly thereafter, VETTER was contacted by Don Burleson, JANI-KING

23   INTERNATIONAL, INC.'s legal advisor, inquiring of VETTER about his side of the sexual

24   harassment accusation.  VETTER denied sexually harassing Mrs. Gomez and advised Mr. Burleson

25   of the fabrication by defendant PERRY.  Burleson informed VETTER that as long as Mrs. Gomez

26   didn't file a complaint on it, VETTER needed to handle the matter internally with his staff.

27

28   VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                         5
     COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

18.    Shortly thereafter, defendant PERRY convened a meeting in the conference room with JANI-KING's employees David Rodriguez, John Brandts and Steve Merlo, saying in front of all that VETTER was under investigation for sexually harassing Mrs. Gomez and that he might loose his job. Plaintiff VETTER denied the accusation and clarified what really happened.   Notwithstanding, defendant PERRY told everyone in the meeting that sexual harassment would not be tolerated.

19.    Later in June 2001, defendant PERRY came to VETTER for assistance in  collecting on a JANI-KING account, a child care facility.  Plaintiff VETTER made numerous phone calls to the JANI-KING account to no avail.  Plaintiff VETTER paid a visit to the child care facility to collect on the outstanding bill without success.  Plaintiff VETTER told defendant PERRY his lack of success and jokingly told her to call Child Protective Services and say she had a child there in order to obtain the last name for the obstinate woman at the child care facility so that JANI-KING could take her to small claims.  Defendant PERRY called Mrs. Bean immediately thereafter and reported VETTER's comment for discipline.  Defendant PERRY convened a special meeting the next morning.  In front of Mr. Brandts, Mr. Merlo, and Mr. Rodriguez, defendant PERRY said that VETTER was going to be let go for asking her "to do something against her religion."  PERRY accused VETTER of damaging JANI-KING and she filed a grievance against VETTER with Mrs. Bean and JANI-KING's Legal Department.

20.    In August of 2001, a new JANI-KING employee, Debbie Howard, was hired as a receptionist.  Mrs. Howard was a friend of defendant RHONDA PERRY and a member of her church.  After Mrs. Howard was hired, PERRY and Howard began reading the Bible during business hours and spending work time on religious writings on company computers.  Mrs. Howard was soon thereafter promoted to customer service representative.  Plaintiff VETTER hired Ayeshia Foster to replace Debbie Howard.

21.    Defendant RHONDA PERRY and Mrs. Howard used their work hours to recruit Mrs. Foster to become a member of their church.  Thereafter, PERRY, Howard, and Foster began to harass Kelly Spingola, JANI-KING's Account Executive, because she didn't belong to their church

VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                                                      6
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    and didn't have children.

2         22.    In January 2002, VETTER was compiling information to respond to a JANI-KING

3    survey regarding year 2001 Franchise Sales.  In responding to the lengthy survey, VETTER was

4    required to review all the franchise files defendant PERRY had responsibility for during the past year.

5    Plaintiff VETTER found defendant PERRY's files in disarray and it took three JANI-KING

6    employees one week to fix them.

7         23.    During this period, defendant PERRY, Mrs. Howard and Mrs. Foster increased the

8    frequency and visibility of their group Bible readings during business hours.  Plaintiff VETTER

9    counseled the women about using company time for religious activities and each time they asserted

10   that they were on their lunch hour or on a break.  Plaintiff VETTER began to note the irregularity

11   of the times these women claimed to be on their lunch hour or break which occurred at 8:30 a.m.,

12   2:00 p.m., 3:00 p.m., 4:30 p.m., etc.

13        24.    A few weeks later, Mrs. Foster's computer and Mrs. Howard's computer caught a

14   virus which left defendant PERRY's as the only functioning computer.  Plaintiff VETTER informed

15   PERRY that he had many bids that needed processing and informed her that Mrs. Foster would need

16   to use her computer to process the bids.  Defendant PERRY refused to allow Mrs. Foster to use her

17   computer and conspired with Mrs. Foster and Mrs. Howard to delay the processing of the bids.  The

18   three women increased their Bible readings and their proselytizing during work hours.

19        25.    In mid January 2002, Mrs. Howard became ill with pneumonia and was out of work

20   for two weeks.  Plaintiff VETTER asked defendant PERRY to help him out in the customer service

21   area due to Mrs. Howard's absence.  Defendant PERRY refused, telling VETTER it was not her

22   problem and that if VETTER didn't correct it, he would be fired.  Defendant PERRY informed

23   VETTER that she had informed Mrs. Bean that VETTER had caused the computer problems.

24        26.    Defendant RHONDA PERRY began to read her Bible to JANI-KING telemarketers.

25   Plaintiff VETTER received a complaint from Mr. Brandts regarding this behavior.  VETTER again

26   counseled defendant PERRY over this conduct.

27

28   VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                              7
     COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

27.     Thereafter, VETTER informed defendant PERRY he needed to use her computer. PERRY told VETTER that Mrs. Bean did not want him in PERRY's office and if he touched her computer she would have him fired.  PERRY accused VETTER of causing cancellations of JANI-KING's accounts and that she would "have God punish [VETTER] for his sins against JANI-KING."

28.     Shortly thereafter, VETTER received a call from his superior who informed him that JANI-KING would be sending a corporate trainer to implement a Sales program and to evaluate his job as Regional Director.  Plaintiff VETTER was informed that he could be fired.

29.     Several days before VETTER's boss was scheduled to arrive, he called defendant PERRY into his office and demanded to know why she was insubordinate to him and trying to get him fired.  Defendant PERRY said "her God and your God were different" and she accused VETTER of being "the Devil acting like a saint."  Defendant PERRY told VETTER that her Bible told her about people like him and she would use all her power with Mrs. Bean to get him fired.

30.     Nathan Zimring arrived in late January 2002, to counsel VETTER.  Mr. Zimring informed VETTER of the matters defendant PERRY had accused VETTER of committing: the incident involving the child care facility customer; false accusations that VETTER went out to lunch with Mr. Brandts to consume alcoholic beverages; false accusations that VETTER frequented topless bars in San Jose with Mr. Merlo; and false accusations that VETTER was leaving work early.

31.     During this meeting VETTER made Mr. Zimring aware of the behavior by defendant PERRY and her cohorts concerning religious proselytizing, Bible readings and prayer meetings during work hours.  Plaintiff VETTER also informed Mr. Zimring that PERRY claimed to have solid connections with Vice President Bean and that he believed that his troubles were getting very political at the top rungs of JANI-KING.  Mr. Zimring told VETTER that JANI-KING's Franchise Development Director, Mike Cavanaugh, thought very highly of Mrs. Bean.  Mr. Zimring also informed VETTER that defendant PERRY's job was secure despite acknowledging the impropriety of the religious activities being conducted during work hours.  Plaintiff VETTER informed Mr. Zimring that this situation was extremely stressful as he had a wife and two children to support.  Mr.

1   Zimring expressed sympathy with VETTER's predicament but did nothing to assist VETTER in
2   controlling defendant PERRY's behavior.   Instead, Mr. Zimring handed VETTER a poor
3   performance evaluation.

4           32.       After Mr. Zimring's departure, VETTER wrote a response to his evaluation and
5   created a course of action on how to increase sales for both franchises and contracts, and keep
6   cancellations low.  VETTER hired three new telemarketers using the new format for which he had
7   recently received training.  Sales appointments began to increase and in February 2002, VETTER
8   sold three franchises, the most in any month since 1997. Defendant RHONDA PERRY  immediately
9   began proselytizing to two of these new telemarketers.  VETTER was going out on 5-7 bids a day
10  and the bids were backing up while PERRY and Howard continued to thwart his ability to succeed
11  by failing to process the bids.  The computers remained unworkable while under the care of defendant
12  PERRY.

13          33.       Plaintiff VETTER asked defendant RHONDA PERRY when corporate was going
14  to fix the computers.  Defendant PERRY said she would look into it.  In the meantime, VETTER
15  demanded to use PERRY's computer to process his bids.  PERRY relented but then used this as an
16  excuse that she could not do her job.   VETTER called corporate himself to inquire about the
17  computer problem. No one at corporate knew anything about the computer problems.  VETTER
18  confronted PERRY on this and she said "oh well, I guess it's your problem not mine."   VETTER
19  demanded to know whay PERRY lied to him about getting the computers fixed and she said "you
20  see, you are the Devil and your sins have caused this problem."

21          34.       Kelly Spingola, JANI-KING's Account Executive, offered to type up bids at her
22  house.  VETTER agreed.  With her assistance, VETTER was able to get ten bids typed.  Defendant
23  RHONDA PERRY found out that VETTER and Spingola were typing bids at Spingola's home and
24  called corporate again telling Mrs. Bean that VETTER was violating corporate policy by taking bids
25  out of the office to be typed.

26

27

28  VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                                  9
    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

35.     On February 20, 2002, Ms. Spingola's last day of working for JANI-KING, she was to pick up a signed contract for a new account she had just sold. She was to meet Mr. Brandts at this account and walk the account with him and the franchise owner. Ms. Spingola made the mistake of not getting the contract signed that day and Mr. Brandts accidentally picked up an unsigned contract and turned it into defendant PERRY. On February 22, 2002, defendant PERRY confronted VETTER in his office and accused him of selling bogus accounts. PERRY showed VETTER the unsigned contract. VETTER explained to PERRY what probably happened and that he was sure it was just a mistake. VETTER summoned Mr. Brandts who immediately took the contract to the client and within one hour a signed contract was delivered to PERRY at her desk. PERRY created a disturbance again over the contract, threatening VETTER that she was going to go through all 377 contracts that JANI-KING had to make sure they were signed. VETTER counseled PERRY and told her that that was not her job. PERRY told VETTER that Mrs. Bean had told her to do it.

36.     At approximately 3 p.m., February 22, 2002, VETTER received a call from Mr. Brandts who was in the office doing paper work. Mr. Brandts told VETTER he had been at the fax machine next to defendant PERRY's office and overheard PERRY and Mrs. Howard state that they were going to "fix" VETTER at 5 p.m. that day.

37.     Plaintiff VETTER returned to the office to write up that day's bids at 4:30 p.m. At 4:55 p.m. defendant RHONDA PERRY and Mrs. Howard walked into VETTER's office and sat down. PERRY said "I and JANI-KING don't trust you anymore. You are the Devil here to destroy this company. You're writing bogus contracts and I can't work with you anymore. I am calling Jill Bean over the weekend and you'll be fired on Monday." After that the two women left VETTER's office leaving VETTER in severe distress. Immediately thereafter, VETTER got up from his desk and collapsed with a sharp shooting pain to his chest. VETTER immediately took one nitroglycerin tablet that he carried as part of his heart medication and he called 911. VETTER spent the night and half the day on Saturday, at Kaiser Hospital in South San Francisco.

VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                          10
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

38.     When VETTER returned home he left voicemails with Mr. Zimring and Mr. Bruce Patch, corporate operations advisor for my office, about the incident.  VETTER received a call back on Monday at 5 p.m. from Mr. Zimring.  VETTER informed Mr. Zimring about PERRY's assault.  Mr. Zimring told VETTER that if he had a doctor's note to get back to the office, as Mr. Jon McAlpine, senior corporate operations advisor, would be there.

39.     Plaintiff VETTER returned to work on February 26, 2002, and gave Mr. McAlpine the doctor's note he had received from Kaiser.  The note only authorized VETTER to come back to work as tolerated; he needed a note that cleared him 100%.  Plaintiff VETTER found his office had been taken over by Mr. McAlpine and Mr. Patch.  Mr. McAlpine was at VETTER's desk and had taken things out of his basket.

40.     Thereafter, VETTER received a note from his Veteran's Administration doctor and faxed it to Mr. McAlpine.  Mr. McAlpine called VETTER on his cell phone on the February 26, 2002.  Mr. McAlpine told VETTER to report back to work the next day, Feb. 27th, at 8 a.m.  At 5 p.m. on February 27th, Mr. McAlpine terminated VETTER for alleged non-performance. This reason was false and pretextual.  The real reason for his termination was in retaliation for opposing defendant PERRY's religious discrimination and harassment and was an act condoning and ratifying PERRY's religious discrimination and harassment.  Upon hearing of his termination, VETTER brought up PERRY's religious harassment and discrimination to Mr. McApline.  Mr. McAlpine said that he had a short talk with PERRY and the problem was now handled.

41.     The acts and omissions by the defendants were designed to vex and did vex the plaintiff and were done with malice, fraud, or oppression, and/or was in reckless indifference of plaintiff' rights.  The acts and omissions by JANI-KING management, including but not limited to, Mrs. Jill Bean, Mr. Nathan Zimring, Mr. Mike Cavanaugh, Mr. Jon McAlpine , Mr. Bruch Patch, and/or JANI-KING's Presidents Mr. Jerry Crawford and Mr. Garry Clark, condoned, ratified, tolerated and/or appeased the conduct of defendant PERRY as alleged herein.

# IV.  STATEMENT OF DAMAGES

42.     As a result of the acts and omissions alleged herein, plaintiff has sustained and will continue to sustain substantial losses of earnings, promotions, bonuses and benefits.  In addition, plaintiff has suffered and will continue to suffer damage to his career and reputation in an amount to be determined according to proof.

43.     As a further result of the acts and omissions alleged herein, plaintiff has suffered and will continue to suffer humiliation, fear, embarrassment and emotional anguish and emotional distress in an amount to be determined according to proof.  In addition, the plaintiff has incurred and will continue to incur medical expenses as a result of the acts and omissions alleged herein.

44.     It has been necessary for plaintiff to retain an attorney to vindicate his rights and he is entitled to attorneys fees and costs should he prevail in this action.  Defendants are liable for an award of punitive damages in an amount appropriate to punish and make an example of defendants and each of them.

# V.  CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Religious Discrimination/Retaliation for Opposing Religious Discrimination and Harassment Against Defendants JANI-KING (42 U.S.C. Section 2000e-2(a)(1))

45.     Plaintiff hereby incorporates by reference paragraphs 1 through 44, inclusive, as though set forth in full herein.

46.     At all times herein mentioned, Title VII, 42 U.S.C. Section 2000 *et seq.* was in full force and effect and was binding upon defendants RHONDA PERRY, JANI-KING OF CALIFORNIA, INC., and  JANI-KING INTERNATIONAL, INC. and DOES 1-25.  Said statute requires defendants to refrain from discriminating against any employee on the basis of religion and from retaliating against any employee who opposes such discrimination or harassment.

47.     Plaintiff VETTER holds a firm and sincere conviction and bona fide religious belief that religion and religious matters are personal, intimate and confidential, and that he has the right to keep his religious beliefs personal, intimate and confidential, and should be free from ridicule and

1   harassment because of this conviction and belief.  Plaintiff's practice of this conviction and belief

2   conflicted with the employment duty placed on plaintiff by defendant JANI-KING to condone, ratify,

3   and/or tolerate defendant RHONDA PERRY, Debbie Howard and Ayeshia Foster's religious

4   activities during work hours as alleged herein.

5           48.     Plaintiff VETTER informed defendant JANI-KING, including, but not limited to, his

6   conversation with Mr. Zimring, of his conflict with defendant RHONDA PERRY, Debbie Howard

7   and Ayeshia Foster's religious activities during work hours as alleged herein.  Defendant JANI-KING

8   terminated plaintiff because of the his inability to fulfill the job requirement, namely, to continue to

9   condone, ratify, and/or tolerate defendant RHONDA PERRY, Debbie Howard and Ayeshia Foster's

10  religious activities during work hours as alleged herein.

11          49.     Defendant JANI-KING took no steps toward accommodating or negotiating with

12  plaintiff VETTER in an attempt to reasonably accommodate his creed and religious beliefs.  The

13  conduct of defendant RHONDA PERRY, her agents, representatives and employees as alleged

14  herein, and ratified, condoned, tolerated and/or encouraged by defendants JANI-KING, discriminated

15  against plaintiff and denied him employment on the basis of his religion in violation of Title VII, 42

16  U.S.C. Section 2000 *et seq.*

17          50.     Such conduct has denied and will continue to deny plaintiff equal protection and rights

18  guaranteed by Title VII..  In addition, defendant PERRY's discriminatory and/or retaliatory motive

19  to have plaintiff VETTER terminated is imputed to JANI-KING because its management became the

20  "cat's paw" of defendant PERRY.  By concealing relevant information from the JANI-KING

21  decisionmakers, PERRY was able to manipulate the decisionmaking process and to influence the

22  decision to terminate VETTER in retaliation for opposing religious harassment and for exercising his

23  religious beliefs and creed..

24          51.     Plaintiff's conviction to keep his religious beliefs personal, intimate and confidential,

25  and his actions opposing ridicule and harassment because of these convictions, were substantial

26  motivating factors in defendant JANI-KING's decision to terminate plaintiff, in violation of Title VII.

27

28

52.     Plaintiff is informed and believes that in addition to the conduct alleged herein, Defendants have engaged in other discriminatory practices which are not yet fully known to plaintiff.

WHEREFORE, plaintiff prays for relief as set forth herein.

## SECOND CAUSE OF ACTION
### Religious Harassment Against Defendants JANI-KING

53.     Plaintiff hereby incorporates by reference as though fully set forth herein, paragraphs 1 through 52.

54.     At all times herein mentioned, Title VII, 42 U.S.C. Section 2000 *et seq.* was in full force and effect and was binding upon defendants JANI-KING OF CALIFORNIA, INC., and JANI-KING INTERNATIONAL, INC. and DOES 1-25.  Said statute prohibits religious-based harassment of employees.

55.     Pursuant to Title VII, it is an unlawful employment practice to for an employer to fail to take all reasonable steps to prevent discrimination and harassment from occurring. An employer also has the duty to take all reasonable steps to end harassment once it occurs, steps that are designed to deter future harassment.

56.     Plaintiff is informed and believes and thereupon alleges that defendant PERRY was the subject of numerous complaints by JANI-KING employees regarding her religious discrimination and harassment, including a previously filed complaint with California's Department of Fair Employment and Housing by an employee who PERRY was successful in having terminated when he opposed her religious discrimination and harassment.   Despite defendant JANI-KING's knowledge, by and through its supervisors, agents and employees, of defendant PERRY's prior religious discrimination and harassment and her harassment and discrimination against plaintiff VETTER, defendants failed to take immediate and appropriate corrective action to stop and/or prevent the harassment. Furthermore, after plaintiff reported the unlawful conduct, defendants failed to take reasonable steps to prevent the harassment from occurring.

57.     Defendant PERRY's attempts to force VETTER to follow her religious beliefs as alleged herein were severe and/or pervasive that altered the conditions of his employment.  This

religious discrimination reflects a longstanding pattern, practice, custom and/or policy of religious discrimination and harassment against those individuals who do not share the religious beliefs of defendant PERRY and her fellow followers.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## PENDENT STATE CLAIMS

### THIRD CAUSE OF ACTION
**Breach of Implied-in-Fact Employment Contract and
Implied Covenant of Good Faith and Fair Dealing
Against Defendants JANI-KING**

**[COUNT ONE - Breach of Implied-in-Fact Contract]**

58.     Plaintiff hereby incorporates by reference as though fully set forth herein, paragraphs 1 through 57.

59.     During the entire course of plaintiff's employment with JANI-KING, there existed an implied in fact employment contract between plaintiff and defendant.  This implied in fact employment contract is based upon non-integrated writings and verbal communications, which at the time of plaintiff's discharge included, but was not limited to, the following terms and conditions:

a.     Plaintiff would be able to continue his employment with JANI-KING indefinitely so long as he carried out his duties in a proper and competent manner;

b.     JANI-KING would provide plaintiff a work environment that would result in a long and continuous career as long as plaintiff performed satisfactorily;

c.     JANI-KING would provide plaintiff a work environment that conformed to generally acceptable business ethics and legal requirements;

d.     JANI-KING would provide plaintiff with ample opportunity for performance review and evaluation, including written appraisals regarding plaintiff's performance with a meaningful opportunity to respond, add suggestions and/or improve where and if necessary;

e.     JANI-KING would not terminate plaintiff's employment in an arbitrary, untrue or capricious manner;

VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                                                                    15
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1           f.      Plaintiff would not be demoted, discharged or otherwise disciplined nor would

2   plaintiff's job functions be reassigned for other than good cause with notice thereof;

3           g.      If grievances or complaints were lodged regarding plaintiff's performance, he

4   would be given notice and a meaningful opportunity to respond and/or improve; and

5           h.      Plaintiff would not be terminated without a proper business objective.

6       60.    This total employment contract was evidenced by the parties' entire course of conduct

7   including the following:

8           a.      Plaintiff's correspondence and other documentation provided to and received

9   from JANI-KING, and its agents and employees, concerning the terms of his employment with JANI-

10   KING, including, but not limited to, plaintiff's performance reviews and JANI-KING's employee

11   manual;

12           b.      An established policy within JANI-KING known to plaintiff and relied upon

13   by him, that an employee such as plaintiff, who had performed services as a good and faithful agent

14   of JANI-KING, would have secure employment tenure with defendant; that an employee such as

15   plaintiff would be permitted to continue association with defendant unless discharged for good and

16   sufficient cause; that an employee such as plaintiff, with a grievance or complaint lodged against him

17   would be provided a meaningful opportunity to respond and/or improve; that an employee such as

18   plaintiff would not be demoted, discharged or disciplined without good and sufficient cause, and

19   would not otherwise have his job functions taken away or reassigned;

20           c.      Again and again during his employment, plaintiff was told by the JANI-KING,

21   by and through its agents, orally and in writing, that he was doing a satisfactory job, would be

22   provided opportunity to advance and make productive use of his talents and time, and would be

23   secure in his employment, including longevity of service, except when falsely accused by defendant

24   PERRY as alleged herein. As a result of the above representations, plaintiff came reasonably to

25   expect and to rely on the promise of job security. Such statements and acts by JANI-KING, by and

26   through its agents, communicated to plaintiff the idea that he had performed satisfactorily, that his

27

28

1  talents and time were in demand, and that his job was secure with JANI-KING. Plaintiff in good faith

2  relied upon these representations and believed them to be true; and

3          d.      Plaintiff's reliance on and belief in and acceptance in good faith of all the

4  assurances, promises and representations alleged herein led plaintiff throughout his employment with

5  JANI-KING to reasonably believe that his employment was secure and that there thereby existed a

6  contract of continuous employment with JANI-KING. As independent consideration for this contract

7  of continuing employment, and as evidence of plaintiff's reliance thereon, plaintiff refrained from

8  seeking any other employment opportunities or to practice in his chosen profession other than as a

9  faithful servant to JANI-KING, and accepted the increases in his responsibilities as an employee of

10  JANI-KING and that such acceptance would not affect his longevity of service nor would his contract

11  for employment be changed.

12          61.     Plaintiff undertook and continued employment and duly performed all the conditions

13  of the contract to be performed by him. Plaintiff has at all times been ready, willing and able to

14  perform and has offered to perform all conditions of this contract to be performed by him.

15          62.     Despite the representations made to plaintiff and the reliance he placed on them, JANI-

16  KING failed to carry out its responsibilities under the terms of the employment contract in the

17  following ways:

18          a.      By failing to provide plaintiff notice of and an opportunity to respond to the

19  false accusations made by defendant PERRY;

20          b.      By retaliating against the plaintiff by subjecting him to an arbitrary, unfair and

21  dishonest characterization of his performance as a faithful servant of JANI-KING because of his

22  opposition to religious discrimination and harassment; and

23          c.      By terminating plaintiff for no reasonable business purpose and without

24  conducting a reasonable investigation of the existence of good cause to terminate him.

25

26          63.     JANI-KING, by and through its agents and employees, breached the afore-mentioned

27

28  VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                          17
    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   total employment contract by the arbitrary and capricious termination of plaintiff because of his

2   religion and creed and because he opposed religious discrimination and harassment in the workplace.

3          WHEREFORE, plaintiff requests relief as hereinafter provided.

4          **[COUNT TWO - Breach of the Covenant of Good Faith and Fair Dealing]**

5          64.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

6          65.    The aforesaid employment contract contained an implied covenant of good faith and

7   fair dealing by which JANI-KING promised to give full cooperation to plaintiff and his performance

8   under said employment contract and to refrain from doing any act which would prevent or impede

9   plaintiff from performing all the conditions of the contract to be performed by him, or any act that

10  would prevent or impede plaintiff's enjoyment of the fruits of said contract.  Specifically, said

11  covenant of good faith and fair dealing required JANI-KING, and its agents and employees, to fairly,

12  honestly and reasonably perform the terms and conditions of the agreement and for the plaintiff to

13  be allowed to serve JANI-KING as a faithful servant for the best interests of its customers.

14         66.    Plaintiff was in an inherently unequal bargaining position in his dealings with JANI-

15  KING.  In addition, once plaintiff committed himself to the above-stated contract and took the

16  reasonable actions alleged herein in reliance, he was placed in a particularly vulnerable position

17  because he had foregone other business and/or employment opportunities.  He had entrusted his and

18  his family's entire livelihood to JANI-KING and its agents' willingness to perform its obligations

19  under the contract, and risked suffering grave harm if JANI-KING and its agents failed to perform.

20         67.    JANI-KING, by and through its agents as alleged herein, instead breached the implied

21  covenant of good faith and fair dealing by engaging in the acts and omissions alleged herein without

22  conducting any reasonable investigation concerning its obligations under the contract, in violation of

23  the terms of plaintiff's contract and other laws of the State of California and the United States as

24  alleged herein, without good or sufficient cause, for reasons extraneous to the contract, and for the

25  purpose of frustrating plaintiff's enjoyment of the benefits of the contract.  Accordingly, JANI-KING

26  breached its implied duty of good faith and fair dealing.  Further, plaintiff is informed and believes and

27

28  VETTER v. JANI-KING OF CALIFORNIA, INC., et al.       18
    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

thereby alleges that JANI-KING breached this covenant with regard to plaintiff through its conduct in a number of other respects, including, but not limited to, the following:

      a.     Subjecting him to differential standards of conduct from other employees;

      b.     Subjecting him to a false light, by innuendo or otherwise, that he was engaged in wrongdoing and/or was unfaithful to JANI-KING and/or its customers through unwarranted, arbitrary and capricious assertions of poor performance;

      c.     Accepting as true the false assertions made against him by defendant PERRY as alleged herein;

      d.     Denying him the opportunity to respond to the unwarranted, arbitrary and capricious innuendo that he was engaged in wrongdoing and/or was unfaithful to JANI-KING and/or its customers when his performance was in fact comparable to other JANI-KING employees performing similar functions;

      e.     Failing to preserve data and evidence that served to exonerate and exculpate plaintiff; and

      f.     Refusing, in bad faith, to accommodate plaintiff's creed and religious beliefs.

WHEREFORE, plaintiff prays for relief as set forth herein.

## FOURTH CAUSE OF ACTION

**[Wrongful Discharge in Contravention of Public Policy Against Defendants JANI-KING]**

68.     Plaintiff hereby incorporates by reference as though fully set forth herein, paragraphs 1 through 67.

69.     There exists in California and the United States a fundamental public policy of freedom of religion and creed as reflected in the California State Constitution, California's Fair Employment and Housing Act, Title VII and the First Amendment to the United States Constitution, among others.

70.     There also exists, in California, a fundamental antidiscrimination policy as reflected

VETTER v. JANI-KING OF CALIFORNIA, INC., et al.
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

19

in the Fair Employment and Housing Act, the California State Constitution, Title VII and expressing public hostility to employment discrimination and actions which disable persons of all religious convictions and creeds from full participation in the economic arena. Plaintiff's termination was in violation of this public policy and had the effect of preventing plaintiff from pursuing his vocation and continuing in the position from which he was terminated by defendants herein.

71.     Defendants' termination of plaintiff's employment as alleged herein, was wrongful, in bad faith, arbitrary and unfair, therefore in breach of said covenant, in that plaintiff was terminated without just or legitimate cause.

72.     As a direct and proximate result of defendants' breach, plaintiff suffered and continues to suffer substantial losses in earnings and other employment benefits, all to his damage in an amount according to proof at trial.

WHEREFORE, plaintiff prays for relief as set forth herein.

## FIFTH CAUSE OF ACTION

**[Intentional Infliction of Emotional Distress Against Defendant RHONDA PERRY]**

73.     Plaintiff hereby incorporates by reference as though fully set forth herein, paragraphs 1 through 72.

74.     Defendant RHONDA PERRY knew that plaintiff VETTER had coronary heart disease, had undergone two angioplasty procedures and was prone to heart trouble when distressed. In January 2002, defendant PERRY said "her God and your God were different" and she accused VETTER of being "the Devil acting like a saint." Defendant PERRY told VETTER that her Bible told her about people like him and she would use all her power with Mrs. Bean to get him fired.

75.     In February 2002, defendant PERRY told VETTER "you see, you are the Devil and your sins have caused this problem."

76.     On February 22, 2002, defendant RHONDA PERRY stated to VETTER: "I and JANI-KING don't trust you anymore. You are the Devil here to destroy this company. You're writing bogus contracts and I can't work with you anymore. I am calling Jill Bean over the weekend

1   and you'll be fired on Monday." This conduct was intended by defendant PERRY to cause VETTER

2   severe emotional distress and did cause VETTER severe emotional distress causing his

3   hospitalization.

4      77.  Defendant PERRY's conduct as alleged herein were attempts to commit a violent

5   injury on the person of JOHN VETTER, is against the public policy of the State of California and

6   falls outside California's worker's compensation bargain.

7      WHEREFORE, plaintiff prays for relief as set forth herein.

8   **SIXTH CAUSE OF ACTION**

9   **[Invasion of Privacy Against Defendant RHONDA PERRY]**

10  **[COUNT ONE - Intrusion Into Private Affairs]**

11     78.  Plaintiff hereby incorporates by reference as though fully set forth herein, paragraphs

12  1 through 77.

13     79.  The conduct of defendant RHONDA PERRY as alleged herein was an intentional

14  intrusion upon the solitude or seclusion, private affairs or concerns of plaintiff JOHN VETTER. This

15  intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable

16  person.  The intrusion caused plaintiff to sustain injury, damage, loss and/or harm.

17     WHEREFORE, plaintiff requests relief as hereinafter provided.

18  **[COUNT TWO - False Light]**

19     80.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

20     81.  The conduct of defendant RHONDA PERRY as alleged herein constituted, in part,

21  a public disclosure of a fact about plaintiff JOHN VETTER, namely, that because VETTER did not

22  share PERRY's religious beliefs or creed, he worshiped "a different god," was a "Devil acting like

23  a saint" and was otherwise evil.  This disclosure was false, and portrayed plaintiff VETTER in a false

24  light.

25

26     82.  The false light in which plaintiff VETTER was placed would be highly offensive to

27

28  VETTER v. JANI-KING OF CALIFORNIA, INC., et al.        21
    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  a reasonable person.  Defendant PERRY had knowledge of or acted in reckless disregard of the

2  falsity of the publicized fact and the false light in which the plaintiff was placed and this public

3  disclosure caused plaintiff to sustain damages.

4       WHEREFORE, plaintiff requests relief as hereinafter provided..

5  **[COUNT THREE - Constitutional Invasion of Privacy - California Constitution, art. I, § I]**

6       83.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

7       84.   The conduct of defendant RHONDA PERRY as alleged herein constituted, in part,

8  conduct which invaded plaintiff's privacy interests.  Plaintiff VETTER had a reasonable expectation

9  of privacy in his religious beliefs and creed.  Plaintiff VETTER holds a firm and sincere conviction

10 and bona fide religious belief that religion and religious matters are personal, intimate and

11 confidential, and that he has the right to keep his religious beliefs personal, intimate and confidential,

12 and should be free from ridicule and harassment because of this conviction and belief.  These beliefs

13 and creed constitute an objective entitlement founded upon broadly based and widely accepted

14 community norms.

15      85.   Defendant PERRY's invasion of VETTER's privacy was serious.  Her conduct

16 constituted an egregious breach of the social norms underlying plaintiff VETTER's privacy right. This

17 serious invasion of privacy caused plaintiff to suffer injury, damage, loss or harm.

18      WHEREFORE, plaintiff prays for relief as set forth herein.

19                    **PRAYER FOR RELIEF**

20 Plaintiff seeks the following relief:

21      1.   For compensatory damages and other special damages according to proof;.

22      2.   For general damages according to proof;

23      3.   For punitive damages, where allowed, according to proof.

24      4.   For an award of interest, including prejudgment interest at the legal rate according to

25      proof.

26      5.   For Plaintiff's costs of suit incurred herein on all causes of action;

27
28 VETTER v. JANI-KING OF CALIFORNIA, INC., et al.                                      22
   COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

6.      For attorneys fees;

7.      For reinstatement;

8.      For an order requiring defendant JANI-KING to implement policies and procedures
        to protect individuals from religious discrimination and harassment, to accommodate
        persons with different religious beliefs, and to protect individuals' privacy interests
        who do not care to publicly share religious beliefs with co-workers; and

9.      For such other relief as the Court may deem proper

DATED:  June 15, 2003                    Law Offices of Frank S. Moore, APC

_____
Frank S. Moore
Attorney for Plaintiff John Vetter

## JURY DEMAND

Plaintiff, JOHN VETTER, demands a jury trial for all matters that may be submitted to
a jury.

DATED:  June 15, 2003

_____
Frank S. Moore
Attorney for Plaintiff John Vetter